Honorable Judge Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

CHRISTOPHER HARRIS,

Defendant.

NO. CR23-019 RAJ

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Jocelyn Cooney, Assistant United States Attorney for said District, respectfully submits this sentencing memorandum.

**RECOMMENDED SENTENCE**

The United States recommends that the Court sentence Mr. Harris to twelve (12) months and one (1) day in custody to be followed by three (3) years of supervised release. The United States also asks the Court to impose special conditions including that upon release, Mr. Harris must: undergo an alcohol and substance abuse evaluation, follow all recommendations that result from that evaluation, and not contact the victims or Arlington Airport. Due to Mr. Harris's limited financial circumstances, the United States is not asking for a fine to be imposed but recommends that restitution be set at



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

$426.75—as agreed in the plea agreement—along with the mandatory special assessment of $100 per count.

## FACTUAL BACKGROUND

As set forth in the pre-sentence report and plea agreement, on November 20, 2022, Mr. Harris pointed a laser pointer at the cockpits of two airplanes flying in the proximity of Arlington Airport in Arlington, Washington. *See* Dkt. # 55 ¶ 9. Video surveillance shows that on the night of November 20, Mr. Harris lasered the planes at a Trojan storage facility in Marysville, Washington located approximately 1.5 miles from Arlington Airport. *Id.* ¶ 9(b)–(c).

### *Count 1*

At around 5:00 pm, Mr. Harris pointed a blue laser pointer at the cockpit of a 750 Cruzer Zenith—a two-person personal aircraft—operating at approximately 500 feet and preparing to land at Arlington Airport. *Id.* ¶ 9(a). Mr. Harris pointed the laser at the plane for approximately twelve (12) to thirteen (13) seconds, tracking the plane as it moved across the sky. *Id.* ¶ 9(b)–(c). The pilot, Victim 1, saw a bright blue beam come into his cockpit, and the beam was shown directly into his eyes. *Id.* ¶ 9(a). Victim 1 was unable to see his instrument panel and had to blindly find the backlight on the aircraft screen to land safely. *Id.* As a result of Mr. Harris pointing the laser at the aircraft, Victim 1 had to receive medical treatment. *Id.* ¶ 9(h).

### *Count 2*

That same night, at approximately 7:33 pm, Mr. Harris pointed the blue laser pointer for approximately twelve (12) to thirteen (13) seconds at a different plane. *Id.* ¶ 9(b). The plane—a Cessna Skyhawk—was a four-seater personal aircraft piloted by a student under the observation of a flight instructor, Victim 2. Victim 2 observed the aircraft being "painted" by the laser. Laser painting is when a laser is kept pointed at a target and the laser radiation bounces off the target and is scattered in all directions. Victim 2 took a video of the lasering from the aircraft, which shows how the laser lit up the cockpit and obscured the pilot's view.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Stills taken from video recorded by Victim 2 in the Cessna Skyhawk*

***Investigation, Arrest, and Prosecution***

After Victim 1 and Victim 2 reported the laserings to the Federal Aviation Administration and Arlington Police Department, an investigation ensued. Using the video from Victim 2 and the flight path from Victim 1, law enforcement determined the laser originated from the Trojan storage facility. Law enforcement pulled surveillance video and entry/exit logs with unique identifiers from the storage facility, and they showed that Mr. Harris had lasered the two aircraft.

On December 9, 2022, Mr. Harris was arrested at the storage facility. Mr. Harris initially lied about his involvement in the lasering's, but later admitted he had pointed the laser into the cockpits of the planes.

On February 15, 2023, the United States charged Mr. Harris by indictment with two counts of Aiming a Laser Pointer at an Aircraft in violation of 18 U.S.C. § 39A. On October 5, 2023, Mr. Harris and the United States reached an agreement in which Mr. Harris pleaded guilty to both counts. As part of that agreement, the United States agreed to recommend a sentence of no more than twelve (12) months and one (1) day.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SENTENCING GUIDELINES

The United States, the defense, and Probation jointly calculate the Guidelines as follows:

| | |
|---|---|
| Base (2A5.2(a)(4)) | 9 |
| Acceptance of Responsibility (3E1.1) | -2 |
| Total | 7 |

With a criminal history category of VI, the guideline imprisonment range is fifteen (15) months to twenty-one (21) months.

## SENTENCING ANALYSIS

### Custodial Sentence

The United States respectfully submits that a sentence of twelve (12) months and one (1) day is sufficient but not more than necessary to comply with the purposes of 18 U.S.C. § 3553(a). The United States below-guidelines recommendation is based on the nature and circumstances of Mr. Harris's conduct, his history and characteristics, and the need for the Court's sentence to promote respect for the law, protect the public, and deter future criminal behavior. The United States also recognizes the mitigating circumstances identified in the pre-sentence investigation report, particularly Mr. Harris's difficult childhood circumstances and Mr. Harris's serious substance abuse disorder. Given those considerations, a twelve (12) month and one (1) day sentence is the shortest sentence necessary to impress upon Mr. Harris the seriousness of his offense and to deter future similar conduct. The sentence is not too harsh, as it is below the low-end of the guidelines range—a range that already reflects the United States agreement not to pursue a higher base offense level for recklessly endangering the safety of an aircraft.

On the other hand, this recommended sentence is not too lenient given the nature of the offense. Pointing a laser at an aircraft is inherently dangerous. In 2012, Congress recognized the growing public safety threat of laser strikes when it made lasering an aircraft a federal crime. FAA data shows that as of early December, there were nearly 12,000 reported laser strikes in the United States in the 2023 calendar year, causing



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

thirty-three (33) injuries.[1] Due to the physics of lasers and cockpits, when a laser hits a cockpit from a distance it disperses and spreads the light out through the entire cockpit.[2] The glare from a laser can make it so a pilot cannot see instruments inside the plane nor visual indicators on the ground like runway lights. Lasers also can cause eye damage to pilots, and it distracts pilots while they make crucial maneuvers like landing.

The circumstances in this case illustrate the exact sort of risk that Congress was responding to when it created this statute. Mr. Harris pointed the laser directly into Victim 1's eyes and temporarily blinded him. As Victim 1 was preparing to land, he could not see his instruments and had to blindly find the backlight on the screen to land safely. Due to the lasering, Victim 1 had to receive medical attention from an optometrist twice. And the video taken by Victim 2 from the second plane shows how lasers pointed at a plane light up the whole cockpit and obscure the vision of a pilot.

Mr. Harris's behavior in this case is particularly concerning. This was not one poor decision by Mr. Harris. The two incidents are separated by approximately two-and-a-half hours. Mr. Harris left the storage facility after lasering the first plane before returning to laser the second plane. Both times, Mr. Harris's actions were deliberate. He pointed the laser for approximately twelve (12) to thirteen (13) seconds—a considerable time—and tracked the plane's cockpit as it moved across the sky. The fact that Mr. Harris chose to go back and engaged in the same dangerous behavior demonstrates that this was not a one-off occurrence of illegal behavior.

Mr. Harris's lengthy criminal history is also of concern. According to the pre-sentence investigation report, Mr. Harris has been found guilty or pleaded guilty to twenty-one (21) adult criminal charges, including seven (7) felonies. *See* Pre-Sentence Investigation Report at 7–14. Many of Mr. Harris's prior criminal convictions are not merely drug offenses; they include multiple convictions for reckless driving, burglary, and attempted possession of an AK-47. *Id.* While on pre-trial release for this charge, Mr.

---

[1] *Laser Safety*, Federal Aviation Administration, https://www.faa.gov/about/initiatives/lasers.

[2] *A comprehensive resource for safe and responsible laser use*, LaserPointerSafety.com, https://www.laserpointersafety.com/laser-hazards_aircraft/laser-hazards_aircraft.html



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Harris committed twenty-five (25) violations before having his bond revoked. Dkt. # 18, 28, 33, 38, 46. Mr. Harris is a danger to the community, and a significant federal sentence is necessary to protect the public from Mr. Harris and to impress upon him a respect for the law.

**Supervised Release**

The United States recommends a three-year term of supervised release. As the pre-sentence investigation report details, Mr. Harris has a serious substance abuse problem, no employment, and no stable housing. Supervised release will assist Mr. Harris after he is released from any custodial sentence the Court imposes, ensure he engages in pro-social habits, and protect the community from future criminal activity. In addition to the standard terms of supervised release and the terms recommended by Probation, the United States recommends that special conditions be imposed that require Mr. Harris to undergo an alcohol and substance abuse evaluation, follow all recommendations that result from that evaluation, and not contact the victims or Arlington Airport. Mr. Harris's criminal history is clearly related to his substance abuse problem, and Mr. Harris expressed his desire to get clean in the pre-sentence investigation report. The United States would also like to see Mr. Harris get clean and a term of supervised release will keep Mr. Harris accountable and ensure he has the resources to access much-needed services.

**Fines and Assessments**

Mr. Harris is indigent, and the pre-sentence investigation report indicates that he is not capable of paying a fine. Thus, the United States is not requesting a fine. There is a $100 mandatory special assessment for each count, for a total of $200.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Restitution**

The United States recommends that restitution be set at $426.75—as agreed in the plea deal—payable to Premera Blue Cross. This restitution is for the cost of Victim 1's optometry visits that were required after Mr. Harris shown the laser directly into Victim 1's eyes.

DATED this 29th day of December, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Jocelyn Cooney*
JOCEYLN COONEY
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington
Phone: (206) 553-4282
E-mail: jconney1@usdoj.gov